ACCEPTED
13-15-00075-CR
THIRTEENTH COURT OF APPEALS
CORPUS CHRISTI, TEXAS
12/7/2015 3:15:24 PM
Dorian E. Ramirez
CLERK

## No. 13-15-00075-CR

FILED IN
13th COURT OF APPEALS
CORPUS CHRISTI/EDINBURG, TEXAS
12/7/2015 3:15:24 PM
DORIAN E. RAMIREZ
Clerk

In the Thirteenth Court of Appeals
Edinburg, Texas

**JUAN MANUEL ALFARO,**

*Appellant*

**V.**

**STATE OF TEXAS,**

*Appellee*

APPEAL FROM CAUSE NO. CR-3287-14-H
289TH District Court, Hidalgo County, TEXAS
HON. Leticia "Letty" Lopez,
Judge Presiding

**Appellant's Brief Submitted in Accordance with Anders v. California**

O. Rene Flores
State Bar No. 24012637
O. Rene Flores, PC
1308 S. 10th Ave.
Edinburg, TX 78539
(956)383-9090
(956)383-9050 (fax)
*Counsel for Appellant*

**NO ORAL ARGUMENT REQUESTED**

## IDENTITY OF PARTIES AND COUNSEL

**Appellant**
JUAN MANUEL ALFARO

**Appellate Counsel**
O. Rene Flores
1308 S. 10th Ave.
Edinburg, Texas 78539
(956) 383-9090
(956) 383-9050

**Trial Counsel**
Armando Marroquin
Marroquin Law Firm
421 S. 12th Street
McAllen, Texas 78501
(956) 287-7400

**Appellee**
STATE OF TEXAS

**Appellee's Counsel**
Theodore "Ted" Hake
Assistant DA
Hidalgo County DA
100 N. Closner
Edinburg, Texas 78539
(956) 318-2300
(956) 318-2301

**Trial Counsel**
Hope Palacios
Assistant DA
Hidalgo County DA
100 N. Closner
Edinburg, Texas 78539
(956) 318-2300

**TABLE OF CONTENTS**

Identity of Parties and Counsel …………………………………………2

Table of Contents……………………………………………………………3

Index of Authorities……………………………………………………4

Anders Statement …………………………………………………………8

Statement of the Case ………………………………………………9

Issues Presented …………………………………………………………10

Statement of Facts ……………………………………………………10

Summary of the Argument ……………………………………………15

Argument ………………………………………………………………………16

Possible Issue 1: After review of the Record on appeal and after reviewing the current state of the law, the undersigned finds that the Court did not abuse its discretion when it denied Appellant Alfaro's Motion to Suppress Statements.

Possible Issue 2: After review of the Record on appeal and after reviewing the current state of the law, the undersigned finds there was no error in not including a 38.23 charge on admission of Appellant Alfaro's statement.

Possible Issue 3: After review of the Record on appeal and after reviewing the current state of the law, the undersigned finds that Appellant Alfaro's finding of guilt was supported by the evidence.

Prayer for Relief ………………………………………………………57

## Index of Authorities

Cases

1. *Almanza v. State*, 686 S.W.2d 157, 171 (Tex.Crim.App.1985)

2. *Alvarado v. State*, 912 S.W.2d 199, 211 (Tex.Crim.App.1999)

3. *Anders v. California, 386 U.S. 738 (1967)*

4. *Beecher v. Alabama, 389 U.S. 35, 88 S.Ct. 189, 19 L.Ed.2d 35 (1967).*

5. *Bell v. State, 582 S.W.2d 800, 812 (Tex.Crim.App.1979);*

6. *Cain v. State, 18 Tex. 387, 389–90 (1857)*

7. *Casias v. State, 452 S.W.2d 483, 488 (Tex.Crim.App.1970).*

8. *Colorado v. Connelly, 479 U.S. 157, 107 S.Ct. 515, 93 L.Ed.2d 473*

9. *Culombe v. Connecticut, 367 U.S. 568, 81 S.Ct. 1860, 6 L.Ed.2d 1037 (1961).*

10. *Davis v. North Carolina, 384 U.S. 737, 86 S.Ct. 1761, 16 L.Ed.2d 895 (1966).*

11. *Delgado v. State, 235 S.W.3d 244, 249 (Tex.Crim.App.2007) (footnote omitted)*

12. *Foster v. State, 101 S.W.3d 490, 497 (Tex.App.Houston [1st Dist.] 2002, no pet.)*

13. *Greenwald v. Wisconsin*, 390 U.S. 519, 88 S.Ct. 1152, 20 L.Ed.2d 77 (1968).

14. *Hamlin v. State*, 39 Tex.Crim. 579, 47 S.W. 656 (1898).

15. *High v. State*, 573 S.W.2d 807, 813 (Tex. Crim. App. [Panel Op.] 1978),

16. *Huizar v. State*, 12 S.W.3d 479 (Tex.Crim.App.2000).

17. *Madden v. State*, 242 S.W.3d 504 (Tex.Crim.App.2007).

18. *Mendoza v. State*, 88 S.W.3d 236, 239 (Tex.Crim.App.2002).

19. *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

20. *Mincey v. Arizona*, 437 U.S. 385, 98 S.Ct. 2408, 57 L.Ed.2d 290 (1978).

21. *Nenno v. State*, 970 S.W.2d 549, 556 (Tex.Crim.App.1998),

22. *Payne v. Arkansas*, 356 U.S. 560, 78 S.Ct. 844, 2 L.Ed.2d 975 (1958).

23. *Perry v. State*, 158 S.W.3d at 446 (U.S.1986).

24. *Posey v. State*, 966 S.W.2d 57, 60 (Tex.Crim.App.1998)

25. *Reck v. Pate*, 367 U.S. 433, 81 S.Ct. 1541, 6 L.Ed.2d 948 (1961).

26. *Rice v. Cooper, 148 F.3d 747, 750 (7th Cir.1998).*

27. *Ritchie v. State, 164 Tex.Crim. 38, 296 S.W.2d 551, 554 (1956).*

28. *Rocha v. State, 16 S.W.3d 1, 19–20 (Tex.Crim.App.2000)*

29. *Rogers v. State, 549 S.W.2d 726, 729–30 (Tex.Crim.App.1977)*

30. *State v. Terrazas*, 4 S.W.3d 720, 727 (Tex.Crim.App.1999)

31. *Vasquez v. State, 225 S.W.3d 541 (Tex.Crim.App.2007).,*

32. *Warren v. State, 29 Tex. 369 (1867)*

33. *Wolfe v. State*, 917 S.W.2d 270, 282 (Tex.Crim.App.1996).

Statutes

1.  TEX.CODE CRIM. PROC. art. 15.17, O'Connor's Criminal Codes Plus, (2015-2016)

2.  TEX.CODE CRIM. PROC. art. 36.14, O'Connor's Criminal Codes Plus, (2015-2016)

3.  TEX.CODE CRIM. PROC. art. 36.19, O'Connor's Criminal Codes Plus, (2015-2016)

4.  TEX.CODE CRIM. PROC. art. 37.07, O'Connor's Criminal Codes Plus, (2015-2016)

5.  TEX.CODE CRIM. PROC. art. 38.21, O'Connor's Criminal Codes Plus, (2015-2016)

6.  TEX.CODE CRIM. PROC. Art. 38.22 (2), O'Connor's Criminal Codes Plus, (2015-2016)

7.  TEX.CODE CRIM. PROC. Art. 38.22 (2)(a), O'Connor's Criminal Codes Plus, (2015-2016)

8.  TEX.CODE CRIM. PROC. Art. 38.22 (3), O'Connor's Criminal Codes Plus, (2015-2016)

9.  TEX.CODE CRIM. PROC. Art. 38.22 (3)(a), O'Connor's Criminal Codes Plus, (2015-2016)

10. TEX.CODE CRIM. PROC. art. 38.22(6), O'Connor's Criminal Codes Plus, (2015-2016)

11. TEX.CODE CRIM. PROC. Art. 38.22 (7), O'Connor's Criminal Codes Plus, (2015-2016)

12. TEX.CODE CRIM. PROC. Art. 38.23, O'Connor's Criminal Codes Plus, (2015-2016)

13. TEX.CODE CRIM. PROC. Art. 38.23(a), O'Connor's Criminal Codes Plus, (2015-2016)

Other

1. George E. Dix, "Voluntariness" and "Intelligence" of Confessions as "Independent" Texas Law Issues, 20 TEX. TECH L.REV. 1017, 1080, 1091 (1989).

Anders Statement

This brief is being submitted in accordance with *Anders v. California*, 386 U.S. 738 (1967). I affirm that I have reviewed the complete Clerk's Record and all fifteen (*15*) volumes of the Reporter's Record, which include arraignment, pretrial hearings, jury selection and the unitary trial proceedings given Appellant Alfaro's plea of guilty to the jury. After having carefully examined this record and researching the relevant statutes and case law, I have concluded that this case presents no meritorious grounds of error upon which an appeal can be predicated. Therefore, I request the Court's permission to withdraw as attorney of record and to allow appellant to file any further briefs he deems necessary or appropriate.

In accordance with *High v. State*, 573 S.W.2d 807, 813 (Tex. Crim. App. [Panel Op.] 1978), I further affirm that, simultaneous with the filing of this brief, I am serving a copy of the brief and my Motion to Withdraw on Appellant, accompanied by a letter

informing Appellant of his right to review the record and to file a pro se response.

## Statement of the Case

On September 4, 2014, Appellant was charged by indictment with the offense of Aggravated Robbery.[1] Appellant entered a plea of *guilty* to the allegations in the indictment on January 14, 2015.[2] On January 16, 2015, Appellant was found GUILTY by a jury and the jury assessed Appellant's punishment at fifty (50) years confinement in the Texas Department of Corrections Institutional Division.[3] The trial court certified Appellant's right to appeal, and his appeal was perfected on February 6, 2015.[4]

---

[1] CR6
[2] Defendant is arraigned in front of the jury. RR13@5; Appellant Alfaro PLEADS "guilty" to the jury. RR13@6; Court admonishes and inquires several times whether he understands what he's doing – to which the Appellant Alfaro advises – Yes. RR13@6-7
[3] CR97; RR14@149-152
[4] CR100; 105

## Issues Presented

My review of the record reveals no issues which can be advanced on appeal in good faith. Any arguable points that could exist are identified herein below and discussed with respect to why they are not meritorious appealable issues.

## Statement of Facts

The State of Texas approached this case as "crime spree." The evidence adduced at trial after Appellant Alfaro pleaded guilty to the jury served to support the plea and further served to support the State's theory.

At trial, the evidence showed that on August 1, 2014, Hidalgo County Sheriff's deputies responded to an assault later classified as an aggravated robbery.[5] Upon his arrival, Deputy Juan Garcia made contact with Ranulfo Dantes Mars who although overwhelmed, bleeding and in shock was able to describe what had just happened.[6] Mars was able to describe what the

---

[5] RR13@13
[6] RR13@15-16; RR15@State's Exhibit 15 and 16 show the jury that his shirt was bloody and he had injuries to the side of his head.

assailants were wearing; he also described the truck the assailants were driving. At this time, deputy Garcia also observed three spent casings found at the scene where the assault took place. This was consistent with Mars' explanation that shots were fired at a passing vehicle. This information would be corroborated through another witness later in the trial.[7]

While at that scene, Deputy Garcia makes contact with another individual reporting another incident just up the road from that location. Apparently, this second individual was advised to travel to where Deputy Garcia was making contact with Mars.[8]

Investigator Ruben Silva testified that after he took a written statement from Mars, he made contact with two individuals at the County Sheriff's substation in Weslaco, Texas. There he identified Luis Amador and Appellant Juan Manuel Alfaro as suspects in this case.[9]

---

[7] RR13@13-22
[8] RR13@21
[9] RR13@31-34

Investigator admitted that Appellant Alfaro appeared intoxicated but further advised the jury that Appellant seemed to be in his right frame of mind. He testified that Appellant understood English and Spanish; he testified that while Appellant Alfaro smelled of alcohol, he was not too intoxicated to have understood his rights. Investigator Silva further advised the jury that Appellant Alfaro was properly Mirandized and waived any rights he had to an attorney and/or to terminate any interview.[10]

Investigator Adam Palmer was called to testify about yet another incident on August 1, 2014. He testified about a "call" to a Gentleman's Club not far from the original call. There, the same truck was described. There again, shots were reported fired.[11] Palmer also related to the jury about this case and how the same description of the assailants and their vehicle was given. In all, Palmer told the jury about three different robberies involving the same

---

[10] RR13@34-38; Note that on cross-examination, Silva admitted that Appellant appeared intoxicated at 3:02am. RR13@39; See also RR13@37, 42
[11] RR13@42-45

descriptions and shots fired. The responding officers and investigators noticed a pattern and began to believe the same suspects were committing all of these robberies. At that point, Palmer and his Sheriff's Department believed they were in fact dealing with a "spree."[12]

Palmer would testify about a couple more incidents in Alamo, Texas later that night. At some point, an eye-witness flagged down a Sheriff's Deputy and was shown where the shooters had apparently fled to hide. Deputy Cindy Caceres was able to detain Amador and Appellant Alfaro. They were taken into custody and detained at the Hidalgo County Sheriff's Department substation in Weslaco, Texas.[13]

At 6am, Palmer made contact with Appellant Alfaro; Palmer and Investigator Avila ended up getting a written statement of accused from Appellant Alfaro.[14] Appellant Alfaro and Luis Amador implicated themselves

---

[12] RR13@41-46
[13] RR13@52-53
[14] RR15@State's Exhibit 36; RR13@55-57

and further led investigators to the mobile home where they were originally detained.[15] Armed with this information, a warrant was executed and a two weapons were recovered.[16] Along with these weapons were live rounds of ammunition stamped with the same brand as the spent casings found at the scene and in the suspect vehicle which was later processed.[17] Palmer also testified that these weapons matched the descriptions given at the scene.[18]

Investigator Alfredo Avila made contact with Appellant Alfaro just before 6 am and according to him, Appellant Alfaro had the normal use of his mental and physical faculties. Avila advised that Appellant Alfaro was cooperative and agreed to give him a

---

[15] RR13@57, 74; Note that Palmer testified he didn't know Alfaro was intoxicated. He observed Appellant Alfaro to be fine and in his right mind and very cooperative. RR13@74-78
[16] RR13@57-63
[17] RR13@61-62, 65; RR15@State's Exhibit 24-28, 6-9
[18] RR13@63

statement.[19]  On cross examination, Investigator Avila advised that Appellant Alfaro admitted everything.[20]

## Summary of the Argument

The undersigned counsel has reviewed the record on appeal thoroughly is unable to identify any legally *non-frivolous* issues. The only areas in which arguable issues could arise would be: (1) Whether the trial court erred by denying Appellant's Motion to Suppress Statement;  (2) Whether there was error in not including an instruction on the voluntariness of the statement of accused; and (3) Whether there was sufficient evidence to support the conviction.

After reviewing the appellate record and the current state of the law, the undersigned is of the opinion that the issues identified herein would not be viable appealable issues.

---

[19] RR15@State's Exhibit 18 and 36.  These Exhibits represent the Miranda Form signed by Appellant Alfaro and the Statement of Accused signed by Appellant Alfaro – they were offered and admitted without objection.; RR13@83-88
[20] RR13@97-99

<u>Argument</u>

***Possible Issue 1***: **After review of the Record on appeal and after reviewing the current state of the law, the undersigned finds that the Court did not abuse its discretion when it denied Appellant Alfaro's Motion to Suppress Statements.**

<u>Applicable Law</u>

Under Article 38.21, "A statement of an accused may be used in evidence against him if it appears that the same was freely and voluntarily made without compulsion or persuasion."[21] A defendant may claim that his statement was not freely and voluntarily made and thus may not be used as evidence against him under several different theories: (*1*) Article 38.22, § 6 - general voluntariness; (*2*) *Miranda v. Arizona*[22] as expanded in Article 38.22, §§ 2 and 3 (*the Texas confession statute*); or (*3*) the Due Process Clause.[23] It may be involuntary under one, two, or all three theories.

A. Claims of involuntariness under the Due Process Clause and *Miranda*

---

[21] TEX.CODE CRIM. PROC. art. 38.21, O'Connor's Criminal Codes Plus, (2015-2016)
[22] 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966)
[23] *Wolfe v. State*, 917 S.W.2d 270, 282 (Tex.Crim.App.1996).

A confession may be involuntary under the Due Process Clause when there is police overreaching.[24] Even if a confession is not the product of a meaningful choice, it is nonetheless "voluntary" within the meaning of the Due Process Clause absent *some* coercive police activity. The Supreme Court made this clear in *Colorado v. Connelly*,[25] when it held that if there is no police coercion or overreaching, there is no due-process violation — even if a suspect is suffering from chronic schizophrenia and is in a psychotic state following the "voice of God" at the time he confesses.[26] Absent police misconduct causally related to the confession, there is

---

[24] *See Perry v. State*, 158 S.W.3d at 446 (defendant not entitled to any jury instruction under art. 38.23(a) as evidence of his intoxication and injury "does not raise any constitutional voluntariness issues because this evidence does not involve any police coercion or other official over-reaching."); *Alvarado v. State*, 912 S.W.2d 199, 211 (Tex.Crim.App.1999) (statement involuntary under federal due process "only if there was official, coercive conduct of such a nature that any statement obtained thereby was unlikely to have been the product of an essentially free and unconstrained choice by its maker").

[25] 479 U.S. 157, 107 S.Ct. 515, 93 L.Ed.2d 473 (U.S.1986).

[26] *Id*. at 164, 107 S.Ct. 515. In *Connelly*, the defendant approached a Denver police officer and said that "he had come all the way from Boston to confess to the murder of Mary Ann Junta, a young girl whom he had killed in Denver sometime during November 1982." *Id*. at 160, 107 S.Ct. 515. Unbeknownst to the police (who scrupulously followed the dictates of *Miranda*), the defendant was apparently obeying the "voice of God" which had instructed him "to withdraw money from the bank, to buy an airplane ticket, and to fly from Boston to Denver." *Id*. at 161, 107 S.Ct. 515. Even though the evidence showed that the defendant was suffering from "command hallucinations that interfered with his volitional abilities; that is, his ability to make free and rational choices" and "he wasn't capable of making a 'free decision' to waive his *Miranda* rights," his confession was not involuntary under the Fifth Amendment. *Id*. at 161–64, 169–71, 107 S.Ct. 515.

"simply no basis for concluding that any state actor has deprived a criminal defendant of due process of law."[27] The Due Process Clause is aimed at protecting suspects from police overreaching, not at protecting people from themselves or other private actors.

The same is true for *Miranda* rights and waivers that apply to custodial-interrogation statements. As the Supreme Court explained in *Connelly*: "*Miranda* protects defendants against government coercion leading them to surrender rights protected by the Fifth Amendment; it goes no further than that."[28] Thus, the defendant's waiver of his *Miranda* rights, made under the perception of coercion flowing from the "voice of God, ... is a matter to which the United States Constitution does not speak."[29]

As Judge Posner has explained:

> The significance of the principle of *Connelly*, the
> principle that the Constitution doesn't protect the

---

[27] *Id*. at 164, 107 S.Ct. 515.
[28] *Id*. at 170, 107 S.Ct. 515.
[29] *Id*. at 170-71, 107 S.Ct. 515.

suspect against himself, is that if he understands the *Miranda* warnings yet is moved by a crazy impulse to blurt out a confession, the confession is admissible because it is not a product of coercion. The police have given him his *Miranda* warnings in an intelligible form; it is not their fault that he is impulsive.[30]

Statements that have been found to be involuntary under *Miranda* or the Due Process Clause were collected in *Connelly*;[31] they involve the crucial element of police overreaching and involve fact scenarios such as the following: (1) the suspect was subjected to a four-hour interrogation while incapacitated and sedated in an intensive-care unit;[32] (2) the suspect, while on medication, was interrogated for over eighteen hours without food, medication, or sleep;[33] (3) the police officers held a gun to the head of the wounded suspect

---

[30] *Rice v. Cooper*, 148 F.3d 747, 750 (7th Cir.1998).
[31] 479 U.S. at 164 n. 1, 107 S.Ct. 515.
[32] *Mincey v. Arizona*, 437 U.S. 385, 98 S.Ct. 2408, 57 L.Ed.2d 290 (1978).
[33] *Greenwald v. Wisconsin*, 390 U.S. 519, 88 S.Ct. 1152, 20 L.Ed.2d 77 (1968).

to extract a confession;[34] (4) the police interrogated the suspect intermittently for sixteen days using coercive tactics while he was held incommunicado in a closed cell without windows and was given limited food;[35] (5) the suspect was held for four days with inadequate food and medical attention until he confessed;[36] (6) the suspect was subjected to five days of repeated questioning during which police employed coercive tactics;[37] (7) the suspect was held incommunicado for three days with little food, and the confession was obtained when officers informed him that their chief was preparing to admit a lynch mob into the jail.[38]

As is evident from these fact scenarios, due-process and *Miranda* claims of involuntariness generally do not require "sweeping inquiries into the state of mind of a criminal defendant who has confessed."[39] They involve an

---

[34] *Beecher v. Alabama*, 389 U.S. 35, 88 S.Ct. 189, 19 L.Ed.2d 35 (1967).
[35] *Davis v. North Carolina*, 384 U.S. 737, 86 S.Ct. 1761, 16 L.Ed.2d 895 (1966).
[36] *Reck v. Pate*, 367 U.S. 433, 81 S.Ct. 1541, 6 L.Ed.2d 948 (1961).
[37] *Culombe v. Connecticut*, 367 U.S. 568, 81 S.Ct. 1860, 6 L.Ed.2d 1037 (1961).
[38] *Payne v. Arkansas*, 356 U.S. 560, 78 S.Ct. 844, 2 L.Ed.2d 975 (1958).
[39] *Connelly*, 479 U.S. at 167, 107 S.Ct. 515.

objective assessment of police behavior. The Constitution leaves voluntariness claims based on the defendant's *state of mind* "to be resolved by state laws governing the admission of evidence."[40] In Texas, that state law is Article 38.22, the Texas Confession Statute.

B. Claims of involuntariness under the Texas Confession Statute

Article 38.22 of the Code of Criminal Procedure sets out rules governing the admissibility of an accused's written and oral statements that are the product of custodial interrogation. Under our precedents, however, Section 6 of Article 38.22 applies to both an accused's custodial and non-custodial statements because it provides that only "voluntary" statements may be admitted.[41] Sections 2 and 3 apply to an accused's

---

[40] *Id*.

[41] *State v. Terrazas*, 4 S.W.3d 720, 727 (Tex.Crim.App.1999) ("Article 38.22, Section 6, literally applies to 'all cases where a question is raised as to the voluntariness of a statement of an accused.'"). In *Terrazas*, this court explicitly overruled *Nenno v. State*, 970 S.W.2d 549, 556 (Tex.Crim.App.1998), to the extent that it held that Article 38.22, § 6 applied only to custodial statements. *Id*. However, the Court concluded in *Terrazas* that the trial court erred, as a matter of law, in ruling that the defendant's statement to a Department of Human Services investigator could be considered "involuntary." *Id*. at 726 (the investigator "telling [defendant] in a noncustodial setting 'what had to be' in her statement is not the type of practice that has been held to be inherently coercive as to make a statement involuntary").

custodial-interrogation statements and provide that only "warned and waived" statements may be admitted. That is, an accused's custodial-interrogation statement is not admissible unless, prior to making the statement, he received the warnings provided in Article 15.17 or Article 38.22, § 2(a) or § 3(a) (which incorporate the requirements of *Miranda*), and he knowingly, intelligently, and voluntarily waived those rights.

Claims of involuntariness under Article 38.22 can be, but need not be, predicated on police overreaching, and they could involve the "sweeping inquiries into the state of mind of a criminal defendant who has confessed" found in *Connelly* that are not of themselves relevant to due process claims.[42] Article 38.22 is aimed at protecting suspects from police overreaching. *But Section 6 of that article may also be construed as protecting people from themselves because the focus is upon whether the defendant voluntarily made the*

---

[42] *Connelly*, 479 U.S. at 166-67, 107 S.Ct. 515.

*statement.* Does it appear — as Article 38.21 requires — that the statement was freely and voluntarily made without compulsion or persuasion?[43] Or, in the case of a custodial-interrogation statement, did the suspect "knowingly, intelligently, and voluntarily" waive the rights set out in Article 38.22 § 2(a) or § (3)(a)? These inquiries do not turn solely on police overreaching. The behavior of the police may or may not be a factor. A confession given under the duress of hallucinations, illness, medications,[44] or even *intoxication*, for example, could be involuntary under Article 38.21 and the Texas confession statute.[45] The defendant in *Connelly* did not have a valid federal constitutional involuntariness claim, but, had he confessed in Texas, he might have had a viable claim

---

[43] TEX.CODE CRIM. PROC. art. 38.21, O'Connor's Criminal Codes Plus, (2015-2016) ("A statement of an accused may be used in evidence against him if it appears that the same was freely and voluntarily made without compulsion or persuasion, under the rules hereafter prescribed.").

[44] *See*, *e.g., Rocha v. State*, 16 S.W.3d 1, 19–20 (Tex.Crim.App.2000) (trial court's general jury instruction under articles 38.21 and 38.22 concerning voluntariness of statement sufficed for jury to consider any evidence of his illness and medication; no error in denying instruction that specifically mentioned illness and medication as that would be a comment on the weight of the evidence).

[45] This has long been the case in Texas. *See Cain v. State*, 18 Tex. 387, 389–90 (1857) ("Before confessions can be received in evidence in a criminal case, it must be shown that they were voluntary. They must not have been obtained by the influence of hope or fear, applied by a third person to the prisoner's mind.").

under Articles 38.21 and 38.22. As Professor Dix has noted, "evidence of a defendant's psychological abnormality" (such as Connelly's evidence of hallucinations and following God's command) "has its full logical relevance" under Texas law.[46]

Under Articles 38.21 and 38.22 and their predecessors, fact scenarios that can raise a state-law claim of involuntariness (even though they do not raise a federal constitutional claim) have in the past included the following: (1) the suspect was ill and on medication and that fact may have rendered his confession involuntary;[47] (2) the suspect was mentally retarded and may not have "knowingly, intelligently and voluntarily" waived his rights;[48] (3) the suspect "lacked the mental capacity to understand his rights";[49] (4) *the suspect was intoxicated, and he "did not know*

---

[46] George E. Dix, "Voluntariness" and "Intelligence" of Confessions as "Independent" Texas Law Issues, 20 TEX. TECH L.REV. 1017, 1080, 1091 (1989).

[47] *Rocha v. State*, 16 S.W.3d 1, 20 (Tex.Crim.App.2000).

[48] *Bell v. State*, 582 S.W.2d 800, 812 (Tex.Crim.App.1979); *Casias v. State*, 452 S.W.2d 483, 488 (Tex.Crim.App.1970).

[49] *Rogers v. State*, 549 S.W.2d 726, 729-30 (Tex.Crim.App.1977) (finding reversible error in trial court's refusal to give jury general instruction on voluntariness of statement when evidence raised an issue that defendant lacked the mental capacity to understand and waive his rights before giving his statement).

*what he was signing and thought it was an accident report*";[50] (5) the suspect was confronted by the brother-in-law of his murder victim and beaten;[51] (6) the suspect was returned to the store he broke into "for questioning by several persons armed 'with six-shooters.'"[52]

C. Jury Submission of Voluntariness Instructions

Under Texas statutory law, there are three types of instructions that relate to the taking of confessions: (1) a "general" Article 38.22, § 6 voluntariness instruction; (2) a "general" Article 38.22, § 7 warnings instruction (involving warnings given under §

---

[50] *Ritchie v. State*, 164 Tex.Crim. 38, 296 S.W.2d 551, 554 (1956). In *Ritchie*, the evidence was undisputed that the defendant was intoxicated, but the trial judge found that he was not so intoxicated that he could not understand what he was doing. *Id*. Therefore, the trial judge "instructed the jury not to consider the [statement] unless they believed beyond a reasonable doubt that, prior to making the statement, the appellant was duly warned, and that thereafter he voluntarily and freely made the same and understood and signed it." This Court held that the trial court did not err in admitting the evidence and instructing the jury as he did. *Id*.; *see also Foster v. State*, 101 S.W.3d 490, 497 (Tex.App.Houston [1st Dist.] 2002, no pet.) (noting that "[l]ack of sleep for as long as 16 hours does not, in and of itself, render a confession involuntary," and that "a person's illiteracy alone will not necessarily render his statement inadmissible.").
[51] *Hamlin v. State*, 39 Tex.Crim. 579, 47 S.W. 656 (1898). As Professor Dix points out, in these early decisions, "It was simply beyond question that private coercion rendered a confession involuntary and that even private detention invoked the predecessor to article 38.22." Dix, 20 TEX. TECH L.REV. at 1083. After 1977, however, the provisions of Article 38.22 (except for Sections 6 and 7) apply only to custodial interrogations by law enforcement officials. See 41 DIX & DAWSON, supra note 17, § 13.31 at 33–35.
[52] *Warren v. State*, 29 Tex. 369 (1867); *See also* Dix, 20 TEX. TECH L.REV. at 1084.

25

2 and § 3); and (3) a "specific" Article 38.23(a) exclusionary-rule instruction. The Section 6 "general" instruction asks the jury: "Do you believe, beyond a reasonable doubt, that the defendant's statement was voluntarily made? If it was not, do not consider the defendant's confession." The Section 7 instruction sets out the requirements of 38.22, § 2 or § 3 and asks the jury to decide whether all of those requirements were met. The Article 38.23(a) "specific" instruction is fact-based: For example, "Do you believe that the Officer who took the statement held a gun to the defendant's head to extract his statement? If so, do not consider the defendant's confession."

In *Vasquez v. State*,[53] confusion exists about which, if any, jury instruction is appropriate because our case law "does not always distinguish, and sometimes blurs, the requirements for getting an instruction

---

[53] 225 S.W.3d 541 (Tex.Crim.App.2007).

under article 38.22 and for getting an instruction under the exclusionary rule of article 38.23."[54]

In an attempt to clarify the distinction: Due process and *Miranda* claims may warrant both "general" and "specific" voluntariness instructions; Texas statutory claims warrant only a "general" voluntariness instruction. It is the defendant's responsibility to delineate which type of "involuntariness" he is claiming—a general lack of voluntariness or a specific police-coerced lack of voluntariness—because the jury instruction is very different depending upon the type of claim.[55]

Obviously, the evidence must raise a "voluntariness" issue, and the defendant should request a jury instruction that relates to his theory of involuntariness. But if the defendant never presents a proposed jury instruction (or fails to object to the

---

[54] *Id*. at 544.
[55] Note again, that Appellant Alfaro lodged NO OBJECTION at the time of trial when his statement of accused was offered.

lack of one), any potential error in the charge is reviewed only for "egregious harm" under *Almanza*.[56]

## 1. Article 38.22, § 6 Instructions

Article 38.22, § 6 is a very detailed section that is essentially independent of the other sections contained within Article 38.22.[57] Section 6 provides:

In all cases where a question is raised as to the voluntariness of a statement of an accused, the court must make an independent finding in the absence of the jury as to whether the statement was made under voluntary conditions. If the statement has been found to have been voluntarily made and held admissible as a matter of law and fact by the court in a hearing in the absence of the jury, the court must enter an order stating its conclusion as to whether or not the statement was voluntarily made, along with the specific finding of facts upon which the conclusion was based, which order shall be filed among the

---

[56] *See Madden v. State*, 242 S.W.3d 504, 513 (Tex.Crim.App.2007).
[57] *See State v. Terrazas*, 4 S.W.3d 720, 727 (Tex.Crim.App.1999) (deciding that Article 38.22, § 5's provision exempting non-custodial statements from the coverage of Article 38.22 did not apply to § 6).

papers of the cause. Such order shall not be exhibited to the jury nor the finding thereof made known to the jury in any manner. Upon the finding by the judge as a matter of law and fact that the statement was voluntarily made, evidence pertaining to such matter may be submitted to the jury and it shall be instructed that unless the jury believes beyond a reasonable doubt that the statement was voluntarily made, the jury shall not consider such statement for any purpose nor any evidence obtained as a result thereof. In any case where a motion to suppress the statement has been filed and evidence has been submitted to the court on this issue, the court within its discretion may reconsider such evidence in his finding that the statement was voluntarily made and the same evidence submitted to the court at the hearing on the motion to suppress shall be made a part of the record the same as if it were being presented at the time of trial. However, the state or the defendant shall be entitled to

present any new evidence on the issue of the voluntariness of the statement prior to the court's final ruling and order stating its findings.[58]

The language "where a question is raised" contrasts with the language found in Article 38.22, § 7 and Article 38.23 which speaks of the evidence raising an issue.[59] Because raising a "question" is what triggers the trial court's duty under Section 6 to conduct a hearing outside the presence of the jury, the only reasonable reading of this language is that a "question is raised" when the trial judge is notified by a party or raises on his own an issue about the voluntariness of the confession. This is the sequence of events that seems to be contemplated by Section 6: (1) a party notifies the trial judge that there is an issue about the voluntariness of the confession (or the trial judge raises the issue on his own); (2) the trial judge holds a hearing outside the presence of the jury; (3) the

---

[58] TEX.CODE CRIM. PROC. art. 38.22, § 6
[59] See TEX.CODE CRIM. PROC. arts. 38.22, § 7 ("When the issue is raised by the evidence ...") and 38.23(a) ("where the legal evidence raises an issue hereunder ...").

trial judge decides whether the confession was voluntary;[60] (4) if the trial judge decides that the confession was voluntary, it will be admitted, and a party may offer evidence before the jury suggesting that the confession was not in fact voluntary; (5) if such evidence is offered before the jury, the trial judge shall give the jury a voluntariness instruction. It is only after the trial judge is notified of the voluntariness issue (or raises it on his own) that a chain of other requirements comes into play, culminating in the defendant's right to a jury instruction.

And Section 6 expressly dictates the content of that instruction to be as follows: "unless the jury believes beyond a reasonable doubt that the statement was voluntarily made, the jury shall not consider such statement for any purpose nor any evidence obtained as a result thereof." Because Section 6 contains its own

---

[60] The trial judge must also make written findings of fact and conclusions of law in support of his ruling. TEX.CODE CRIM. PROC. art. 38.22, § 6. The need for written findings should alert the parties and trial judge to the need for a general voluntariness jury instruction as well.

jury-instruction provision, it is not governed by the jury-instruction provision found in Section 7.[61] The obvious purpose of Section 7 is to authorize and require jury instructions regarding the warnings and safeguards for written and oral statements outlined in Article 38.22, § 2 & § 3 (warnings on the right to remain silent, right to counsel, etc).

Consequently, a Section 6 instruction becomes "law applicable to the case" under *Posey v. State*[62] only if the parties actually litigate a Section 6 voluntariness issue before the trial judge. If such litigation occurs (on the admissibility of evidence for example), a jury instruction need not be specifically requested to pass the *Posey* gateway, although a request would still be necessary to obtain the most beneficial harm analysis under *Almanza v. State*.[63]

---

[61] *See Terrazas*, supra (§ 5 not applicable to § 6, given the specific provisions found in § 6).
[62] 966 S.W.2d 57, 60 (Tex.Crim.App.1998) (a defensive issue is not "law applicable to the case" unless the defendant timely requests the issue or objects to its omission from the jury charge).
[63] 686 S.W.2d 157, 171 (Tex.Crim.App.1985) ("some harm" versus "egregious harm").

An interpretation of Section 6 that requires some sort of litigation before it becomes law applicable to the case accords not only with the statutory language but also with common sense. The broad range of voluntariness issues covered by Section 6 could easily be implicated by evidence that would also be relevant for other purposes, and Section 6 does not even require the existence of a factual dispute that might at least obliquely alert the trial judge to the need for an instruction. The Section 6 requirement that voluntariness be litigated in some manner before a jury instruction becomes necessary ensures that the trial judge is on notice that the instruction is required.[64]

For example, the evidence may be undisputed that the defendant did not sleep for 24 hours, or has a low I.Q., *or was "high" on drugs at the time he gave his statement*. If a reasonable jury could find that the facts, disputed or undisputed, rendered him unable to

---

[64] *Vasquez v. State*, 225 S.W.3d 541, 545 (Tex.Crim.App.2007) (noting that, although a defendant may be entitled to an Article 38.22 jury instruction even when the evidence is undisputed, "[s]ome evidence must have been presented to the jury that the defendant's confession was not given voluntarily.").

make a voluntary statement, he is entitled to a general voluntariness instruction when he has raised a question of the voluntariness of his statement.

## 2. Article 38.22, § 7 (Statutory Warnings) Instructions

If the defendant made his statement as the result of custodial interrogation, he is also entitled—when the issue is raised by the evidence—to have the jury decide whether he was adequately warned of his rights and knowingly and intelligently waived these rights. Section 7 of Article 38.22 states:

> When the issue is raised by the evidence, the trial judge shall appropriately instruct the jury, generally, on the law pertaining to such statement.[65]

The phrase "the issue" refers to compliance with the statutory warnings set out in both Articles 15.17 (Duties of Arresting Officer and Magistrate) and 38.22, §§ 2 & 3, and the voluntariness of the defendant's waiver of the rights. For it to be "raised by the

___
[65] TEX.CODE CRIM. PROC. art. 38.22, § 7.

evidence" there must be a genuine factual dispute, just as is true under Article 38.23 issues. The same procedures—including a hearing outside the presence of the jury and the entry of written findings—that apply to a general voluntariness challenge under Section 6, also apply to a challenge that is made to the sufficiency of warnings and voluntary waiver of the rights communicated by those warnings. As with Section 6, the trial judge's Section 7 jury instructions are "general" ones that set out the pertinent law and legal requirements of Sections 2 and 3 (or, in an appropriate case, those of Article 15.17).[66]

But suppose there is some evidence that the police held a gun to the head of the defendant—who, unbeknownst to the police, had not slept for twenty-four hours—to extract the confession. In that case, the defendant may also be entitled to a fact-specific, exclusionary-rule instruction, in addition to the two general voluntariness instructions.

---

[66] *See, e.g.*, *Mendoza v. State*, 88 S.W.3d at 238 n. 1 (Tex.Crim.App.2002) (quoting a portion of an Article 38.22, § 7 jury instruction).

3. <u>Article 38.23 (Exclusionary Rule) Instructions</u>

Article 38.23(a) states that

(a) No evidence obtained by an officer or other person in violation of any provisions of the Constitution or laws of the State of Texas, or of the Constitution or laws of the United States of America, shall be admitted in evidence against the accused on the trial of any criminal case.

In any case where the legal evidence raises an issue hereunder, the jury shall be instructed that if it believes, or has a reasonable doubt, that the evidence was obtained in violation of the provisions of this Article, then and in such event, the jury shall disregard any such evidence so obtained.[67]

The wording is absolute ("the jury shall be instructed"), just as it is in Article 38.22, but the triggering mechanism is more complex.[68] As we recently held in *Madden v. State*,[69] the second sentence of

---

[67] TEX.CODE CRIM. PROC. art. 38.23.
[68] *See Murphy v. State*, 640 S.W.2d 297, 299 (Tex.Crim.App.1982).
[69] 242 S.W.3d 504 (Tex.Crim.App.2007).

Article 38.23 requires a jury instruction only if there is a genuine dispute about a material fact.[70] A defendant must establish three foundation requirements to trigger an Article 38.23 instruction: (1) the evidence heard by the jury must raise an issue of fact; (2) the evidence on that fact must be affirmatively contested; and (3) the contested factual issue must be material to the lawfulness of the challenged conduct in obtaining the statement claimed to be involuntary.[71] The defendant must offer evidence that, if credited, would create a reasonable doubt as to a specific factual matter essential to the voluntariness of the statement.[72] This factual dispute can be raised only by affirmative evidence, not by mere cross-examination questions or argument.[73]

For example, the officer in our hypothetical may deny, on cross-examination, that he held a gun to the defendant's head to extract the confession. The

---

[70] *Id*. at 510; *See also Holmes v. State*, 248 S.W.3d 194, 199 (Tex.Crim.App.2008); *Pierce v. State*, 32 S.W.3d 247, 251 (Tex.Crim.App.2000).
[71] 242 S.W.3d at 510.
[72] *Id. See also* 40 GEORGE E. DIX & ROBERT O. DAWSON, TEXAS PRACTICE: CRIMINAL PRACTICE AND PROCEDURE, § 4.194, at 282 (2d. ed.2001).
[73] *Madden*, 242 S.W.3d at 513 nn. 22–23.

37

implication by counsel, that the officer did perform that act, does not, by itself, raise a disputed fact issue. But if the defendant (or some other witness) testifies that the officer held a gun to his head, then a disputed fact issue exists. And the jury must resolve that disputed fact issue.

If the jury finds that the officer did hold a gun to the defendant's head, the statement is involuntary as a matter of federal constitutional law. If the jury finds the officer did not do so, the statement is not constitutionally involuntary. Of course, if there is no disputed factual issue—if there is a video definitively showing that the officer did or did not hold a gun to the defendant's head—the legality of the conduct is determined by the trial judge alone, as a question of law. The legal question would never go to the jury.

Normally, "specific" exclusionary-rule instructions concerning the making of a confession are warranted only where an officer uses inherently coercive

practices like those set out in *Connelly*.[74] In Texas, if there is a disputed fact issue about whether this type of coercive practice was employed—by either an officer or a private citizen[75]—to wring a confession out of a suspect against his will, a specific exclusionary-rule instruction under Article 38.23 is appropriate.

### 4. Error in the Failure to Give Appropriate Voluntariness Instructions

The question then becomes: When does a trial judge err in failing to give an Article 38.22 or 38.23 jury instruction? Today's cases might appear to be in conflict on whether there can be any error whatsoever—at least in the Article 38.23 context—absent a proper request by the defendant. In *Mendoza*, the Court of Criminal Appeals stated, "Generally, when evidence from any source raises a defensive issue and the defendant properly requests a jury charge on that issue, the

---

[74] *Connelly*, 479 U.S. at 164 & n. 1, 107 S.Ct. 515; *see also State v. Terrazas*, 4 S.W.3d 720, 727 (Tex.Crim.App.1999) (citing Note: Evidence-Criminal Law-Constitutional Law-Due Process-Confessions-Judge and Jury-Determination of Preliminary Fact of Voluntariness of Confession, 3 BAYLOR L.REV. 561, 563–65 (1951) (inherently coercive practices include: subjection to persistent and protracted questioning, threats of mob violence, unlawful detention incommunicado without advice of counsel or friends, and taking at night to lonely and isolated places for questioning)).
[75] *See Miles v. State*, 241 S.W.3d 28, 39 (Tex.Crim.App.2007).

trial court must submit the issue to the jury."[76] But that general statement does not imply the converse—that the trial court need never submit a jury instruction on a particular defensive issue unless the defendant properly requests one. There is nothing in that sentence or in the rest of the *Mendoza* opinion that states or holds that the trial judge shall instruct the jury to disregard illegally obtained evidence only if the defendant requests a jury charge on that issue.

Under *Posey v. State*,[77] a trial court has no duty to instruct the jury on unrequested defensive issues-such as mistake of fact.[78] A defensive issue is not "law applicable to the case" for purposes of Article 36 unless the defendant timely requests the issue or objects to the omission of the issue in the jury charge. Any other holding would render Article 36.14—which also requires a party to make specific objections to the charge—meaningless, and "might encourage a defendant to retry the case on appeal under a new

---

[76] *Mendoza v. State*, 88 S.W.3d 236, 239 (Tex.Crim.App.2002).
[77] 966 S.W.2d 57 (Tex.Crim.App.1998).
[78] *Id*. at 60.

defensive theory effectively giving him two bites at the apple."[79]

The principle in *Posey* is that no rule or statute requires the trial judge to give instructions on traditional defenses and defensive theories absent a defendant's request. As stated in *Delgado*: "The trial judge has an absolute sua sponte duty to prepare a jury charge that accurately sets out the law applicable to the specific offense charged. But it does not inevitably follow that he has a similar sua sponte duty to instruct the jury on all potential defensive issues, lesser-included offenses, or evidentiary issues. These are issues that frequently depend upon trial strategy and tactics."[80] These are also issues on which instructions are not mandated by any statute.[81] Thus,

---

[79] 966 S.W.2d at 62–63.
[80] *Delgado v. State,* 235 S.W.3d 244, 249 (Tex.Crim.App.2007) (footnote omitted).
[81] For example, TEX.R. EVID. 105(a) explicitly recognizes that the advocates bear full responsibility for requesting appropriate limiting instructions when they are entitled to them. The rule states:
(a) Limiting Instruction.—When evidence which is admissible as to one party or for one purpose but not admissible as to another party or for another purpose is admitted, the court, upon request, shall restrict the evidence to its proper scope and instruct the jury accordingly; but, in the absence of such request the court's action in admitting such evidence without limitation shall not be a ground for complaint on appeal.

under *Posey*, it is only when a "requirement of the various statutory provisions referenced in Article 36.19 'has been disregarded,'" that the trial court errs in omitting instructions relative to that statute.[82]

But where a rule or statute requires an instruction under the particular circumstances, that instruction is "the law applicable to the case." Such statutes and rules set out an implicit "If-then" proposition: If the evidence raises an issue of voluntariness, accomplice witness, confidential informant, etc., then the trial court shall instruct the jury that whatever the statute or rule requires. In *Huizar v. State*,[83] for example, it was held that Article 37.07 is "the law applicable" to all non-capital punishment proceedings. Thus, the trial judge must instruct the jury at the punishment phase concerning that law, including the fact that the State

---

TEX.R. EVID. 105(a) (emphasis added). Trial judges should be wary of giving a limiting instruction under Rule 105(a) without a request because a party might well intentionally forego a limiting instruction as part of its deliberate strategy "to minimize the jury's recollection of the unfavorable evidence." United States v. Johnson, 46 F.3d 1166, 1171 (D.C.Cir.1995).
[82] *Posey*, 966 S.W.2d at 60 & n. 5
[83] 12 S.W.3d 479 (Tex.Crim.App.2000).

must prove any extraneous offenses beyond a reasonable doubt.[84] *Posey* was distinguished there as it was explained the difference between instructing the jury on "defensive" issues and instructing them on the law that is applicable to all cases.

Articles 38.21–38.23 are legislatively mandated procedures governing the admission and consideration of a defendant's statements. Article 38.21 explicitly states that voluntary statements may be used in evidence "under the rules hereafter prescribed"—that is, Article 38.22 and Article 38.23.

Article 38.22, § 6 is "the law applicable" to any case in which a "question" is raised and litigated as to the "general" voluntariness of a statement of an accused. As noted above, under that statute, the trial judge must then (1) make an independent determination that the statement was made under voluntary conditions; and then (2) instruct the jurors that they shall not consider the statement for any purpose unless they

---

[84] *Id*. at 484.

believe, beyond a reasonable doubt, that the statement was made voluntarily.

Article 38.23 is "the law applicable" to any case in which a specific, disputed issue of fact is raised concerning the constitutional voluntariness of the making of the defendant's statement. These are statutorily mandated instructions and the trial judge must include them in the jury instructions when the voluntariness of a defendant's statement is at issue.

### *Law Applied to the facts in the instant case*

In the instant case, there was evidence that in fact Appellant Alfaro gave a statement of accused.[85] Note that State's witness, Investigator Ruben Silva testified that after making initial contact with the defendant, his first impression was that he was uncooperative.[86] This witness would go on to testify that he also believed Appellant Alfaro was under the influence of some kind of alcohol or drug at that

---

[85] RR14@ State's Exhibit 36
[86] RR11@11

time.[87] Even so, it seemed to Investigator Silva that Appellant Alfaro understood what he was saying to him.[88] "He appeared to have full use of his mental and physical faculties."[89]

Investigator Silva advised Appellant Alfaro of his rights and he understood them as indicated by his initials and his signature.[90] However much Appellant Alfaro was uncooperative, he persisted that he didn't know anything[91] yet he never exercised his right to an attorney or to remain silent; he simply continued to say he knew nothing.[92] Investigator Silva clarified on cross examination and on re-direct examination that the only signs of intoxication he saw were that Appellant Alfaro smelled of alcohol and he was uncooperative.[93] When pushed for clarity *by the Court*,[94] Investigator

---

[87] RR11@12
[88]  They spoke in English and Spanish and Silva testified it was his impression Appellant Alfaro understood him in both languages.  RR11@13-14; When asked which language Appellant Alfaro preferred to be Mirandized in and Appellant chose Spanish.  RR11@14; See also *Miranda* Warnings (in Spanish) RR11@15, 17-18
[89] RR11@12-13
[90] RR11@15-16, 17-18
[91] RR11@17
[92] RR11@17
[93] RR11@27
[94] Note that the Court's examination of the witness drew no objection from the defense.

Silva admitted the only "sign" of intoxication was that defendant smelled of alcohol.[95] Silva would further testify that Defendant did not have slurred speech;[96] Appellant Alfaro had no problems maintain his composure; he had no problems maintaining his balance; he was not "falling over;" he knew where he was, who Silva was and who he was; he was lucid and in his right mind; he had no problems holding and using the pen.[97]

Next, the testimony at the suppression hearing shows that Investigator Adam Palmer arrived at 6 am;[98] when he made contact with Appellant Alfaro, he did not appear to be intoxicated although he'd learned Appellant Alfaro was slightly intoxicated a few hours earlier. Approximately three hours had passed from the time Alfaro was Mirandized and the time that this witness made contact. Palmer testified: to him, Alfaro appeared to have the normal use of his mental and

---

[95] RR11@27
[96] RR11@28
[97] RR11@29
[98] The testimony shows that Palmer got to the station at 4 am but I didn't not start talking to Appellant Alfaro until 6 am. When he did see him and talk to him, he appeared to be in a normal mental state. RR11@39

physical faculties;[99] Appellant Alfaro understood English; he is a high school graduate;[100] Appellant Alfaro spoke plainly in English; Appellant Alfaro never requested an attorney nor did he ever request that the interview be terminated.

Then Investigator Avila testified that he took the statement of accused from Appellant Alfaro.[101] When he made contact, Appellant Alfaro appeared to have the normal use of his mental and physical faculties; he understood the English language; they spoke in English.[102] According to Avila, Appellant Alfaro never requested an attorney; He did not ask that the interview be terminated; Avila did not coerce Appellant Alfaro or threaten him; He did not promise Appellant Alfaro anything in exchange for his statement; He did not deny Appellant Alfaro any basic necessities.[103]

---

[99] RR11@38
[100] RR11@38
[101] Made contact around 6 am; RR11@42

[102] RR11@44
[103] RR11@44-45

According to Avila, Appellant Alfaro's 2-page statement of accused was prepared voluntarily on August 2, 2014. It was created and prepared at 6am;[104] Appellant Alfaro talked while Avila typed as he's talking; Appellant Alfaro had an opportunity to review and correct any mistakes; it is then printed out.[105]

The rights contained within the statement were reviewed with Appellant Alfaro and he acknowledged he understood them as indicated by his initials next to each of the rights.[106] According to Avila, after that, Defendant Alfaro freely and voluntarily waived his rights and gave the statement of accused.[107]

Although the Defense argued the Statement of Accused was not given freely and voluntarily because Appellant Alfaro was intoxicated[108] at least while being Mirandized – referring to State's Exhibit 1 – the

---

[104] this exhibit also contains the Miranda warnings (same as on State's Exhibit 1)
[105] RR11@47; This exhibit also has the Miranda Warnings listed on the exhibit itself.
[106] RR11@48-49
[107] RR11@49; Avila testified that he did not have the impression Appellant Alfaro was under the influence of any drug, alcohol or medication; It took about 3 ½ hours to take the statement. RR11@54-55
[108] He was not in the right state of mind to intelligently and freely waive his rights

defense did not put on any evidence to that effect. The defendant must offer credible[109] evidence that would create a reasonable doubt as to a specific factual matter essential to the voluntariness of the statement.[110] This factual dispute can be raised only by affirmative evidence, not by mere cross-examination questions or argument.[111]

Defense counsel waived any possible error by not objecting to the admissibility of the statement of accused at the time of trial. State's Exhibit 18 was offered and admitted without objection.[112] Exhibit 36 offered and admitted without objection.[113]

Given the evidence adduced by the State at the suppression hearing and further considering the defense produced no affirmative evidence to the contrary, Appellant Alfaro was appropriately Mirandized; he

---

[109] Noting of course that the trial court is the sole judge of the credibility of the witnesses at the suppression hearing. Note further that Appellant did not testify to his own intoxication; nor did Appellant Alfaro contradict the testimony of the investigators that he had the normal use of his mental and physical faculties at the time he was Mirandized and when he gave the Statement of Accused.

[110] *See* 40 GEORGE E. DIX & ROBERT O. DAWSON, TEXAS PRACTICE: CRIMINAL PRACTICE AND PROCEDURE, § 4.194, at 282 (2d. ed.2001).

[111] *Madden*, 242 S.W.3d at 513 nn. 22-23.

[112] RR13@37; RR13@42

[113] RR13@88

appeared to have understood his rights sufficiently enough to voluntarily waive them. The evidence shows that the Statement of Accused was given voluntarily. Further, the evidence adduced at the suppression hearing was devoid of any "police overreaching." Accordingly, undersigned counsel believes there is no meritorious issue for appeal with respect to the Court's ruling on Appellant Alfaro's Motion to suppress the statement of accused. The undersigned does not believe the record on appeal supports an abuse of discretion on the part of the trial court.

**Possible Issue 2: After review of the Record on appeal and after reviewing the current state of the law, the undersigned finds there was no error in not including a voluntariness charge on admission of Appellant Alfaro's statement.**

A. Standard of Review - *Almanza*

Because Appellant Alfaro not properly object to the jury charge Alfaro could only obtain reversal if any jury charge errors, assuming they exist, were

egregious.[114] Under *Almanza*, courts evaluate harm by taking into account (1) the entire jury charge; (2) the state of the evidence, including contested issues; (3) arguments of counsel; and (4) any other relevant information contained in the record as a whole.[115]

B)   Voluntariness   of   Appellant's   Statement   of Accused

Typically, a Court should submit a 38.23 instruction to the jury when voluntariness of a confession is raised by the evidence. However, even if Appellant Alfaro could show in the record that the issue of voluntariness was raised: (1) because of Appellant Alfaro's intoxication at the time he was Mirandized, (2) because Appellant Alfaro's intoxication sufficiently compromised his ability to knowingly, intelligently and voluntarily waive the rights contained within the Miranda Warnings, he waived any right to that instruction when he lodged "no objection"

---

[114] (Conceding defense counsel did not object to the jury charge); *see also Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985) (describing "egregious harm").
[115] *See Almanza*, 686 S.W.2d at 171.

at the time the Miranda Form and the Statement of Accused were admitted at trial.[116] Appellant neither requested a voluntariness instruction nor objected to its exclusion.[117]

The first *Almanza* factor requires this Court to consider the entirety of the jury charge.[118] In this case, the charge instructed the jury that Appellant was charged with Aggravated Robbery and that Appellant Alfaro voluntarily entered a plea of guilty, persisted in his plea of guilty and further that it appeared to the Court that Appellant Alfaro was competent to enter such a plea of guilty. Accordingly, the Court instructed the jury to find Appellant Alfaro guilty of Aggravated Robbery and assess his punishment."[119] The charge also contained general language, informing the jury of the conditions of probation and general principles of law. *Assuming* the charge was erroneous by omission of an Article 38.23 instruction, as a

---

[116] State's Exhibit 18 was offered and admitted without objection. RR13@37; RR13@42; Exhibit 36 offered and admitted without objection. RR13@88
[117] Insert reference to jury charge conference
[118] CR86
[119] CR86

52

whole, the jury charge did not further compound any harm suffered.[120]

The second *Almanza* factor requires this Court to consider the state of the evidence. In this case, there was no testimony which created a fact issue as to whether Appellant Alfaro was coerced by the investigators into signing his written confession. Appellant Alfaro did not testify in order to negate his guilt for the offense. In fact, Appellant entered a plea of guilty.[121] No harm can be shown on this basis. Despite the lack of the Article 38.23 instruction, Appellant Alfaro's the resultant finding of guilty was resolved consistently with Appellant Alfaro's acceptance of responsibility when he entered a plea of guilty.[122] Implicit in any *Almanza* challenge here is a contention that if the jury determined Appellant Alfaro's statement was involuntary, the State would

---

[120] Again, noting that Defense counsel *did not object* to the admission of the statement at trial and further recognizing the implied strategy of "throwing defendant Alfaro on the mercy of the jury," the undersigned does not presume to allege ineffectiveness; rather counsel goes through this exercise in order to explore any meritorious issues for appeal.
[121] RR13@6
[122] RR13@6

have not been able to carry its burden of showing Appellant Alfaro's guilt. The evidence was legally sufficient for the jury to reasonably conclude that Appellant was guilty of aggravated robbery. Considering the circumstantial and direct evidence, the jury could also have reasonably found Appellant guilty even without the statement. Thus, Appellant's own plea contributed to the finding of guilt for aggravated robbery. In order to have acquitted Appellant, the jury would have had to discredit all testimony, including Appellant Alfaro's plea of guilty. Under the particular facts of this case, any showing of harm would amount to theoretical, rather than action harm.

The third *Almanza* factor requires this Court to consider the arguments of counsel. Defense counsel addressed the voluntariness of Appellant's statement of accused at the pretrial suppression hearing only. There was no objection to either the admission of Appellant's Miranda form or the statement of accused.[123] Instead,

---

[123] RR15 @ State's Exhibits 18 and 36

much of the focus of the defensive theory during closing argument was that Appellant Alfaro *was* guilty and was sorry for his actions.

The fourth *Almanza* factor requires this Court to consider other relevant information contained in the record. It bears repeating that Appellant affirmatively confirmed to the trial court that he had no objections to the jury charge.[124] After reviewing the entire record under the appropriate *Almanza* harm analysis standard, it is apparent that egregious harm *has not* occurred in this case. As such, the undersigned finds no meritorious issue on appeal here.

**Possible issue number three, whether appellant's finding of guilt was supported by the evidence.**

Appellant entered a plea of guilty. The jury sentenced appellant to imprisonment for fifty (50) years for the offense of aggravated robbery.[125] The record reflects appellant pleaded guilty to the jury.[126]

---

[124] RR14@120

[125] CR93; 97; RR13@6

[126] Defendant is arraigned in front of the jury. RR13@5; Appellant Alfaro PLEADS "guilty" to the jury. RR13@6; Court admonishes and inquires several

This plea of guilty to the jury made Appellant Alfaro's trial a unitary proceeding.[127] The trial court, accordingly instructed the jury to find the defendant guilty and assess punishment.[128] *Gonzales v. State* states, "the court should instruct the jury to find the defendant guilty as part of the punishment charge."[129] In *Basaldua v. State*, the court noted that, though it was argued that the charge did not require the jury find the defendant guilty, the trial court used a standard form that instructed the jury to find the defendant guilty and assess his punishment.[130] It is well established that when a defendant has entered a guilty plea to a felony before the jury, there remains no issue of guilt for the factfinder to determine.[131] A plea of guilty substitutes for a jury verdict of guilt and is itself a conviction.[132] Like a jury's verdict, a

times whether he understands what he's doing – to which the Appellant Alfaro advises – Yes.  RR13@6-7

[127] *State v. Aguilera*, 165 S.W.3d 695, 698 n. 6 (Tex.Crim.App.2005).

[128] CR86

[129] 868 S.W.2d 854, 857 (Tex.App.–Dallas 1993, no pet.) (emphasis added).

[130] 481 S.W.2d 851, 855 (Tex.Crim.App.1972); CR86

[131] *Holland v. State*, 761 S.W.2d 307, 313 (Tex.Crim.App.1988). *See also In re State ex rel. Tharp*, 393 S.W.3d 751, 757 (Tex.Crim.App.2012) (a plea of guilty to a jury eliminates guilt as an issue to be determined).

[132] *Fuller v. State*, 253 S.W.3d 220, 227 (Tex.Crim.App.2008).

plea of guilty is conclusive and nothing more is required but to give judgment and sentence.[133] "When a defendant pleads guilty to a jury, the jury need not return any verdict of guilty. The case simply proceeds with a unitary punishment hearing."[134]

Accordingly, the undersigned finds no meritorious appeal as it relates to sufficiency of the evidence to support the conviction.

<u>Prayer for Relief</u>

Wherefore, premises considered, Appellant prays this Court grant the undersigned's motion to withdraw as counsel. No oral argument is requested or needed.

Respectfully submitted

O. Rene Flores, PC
State Bar No. 24012637
1308 S. 10th Ave.
Edinburg, TX 78539
(956)383-9090
(956)383-9050 (fax)

*/S/ O. Rene Flores*
O. Rene Flores

---

[133] *Id*
[134] *Id*.

CERTIFICATE OF SERVICE

I hereby certify that a true and accurate copy of the foregoing Anders Briefing Brief was served in accordance with the rules on the following persons:

Theodore "Ted" Hake
Assistant District Attorney
Hidalgo County District County Attorney
Appellate Division
Hidalgo County Courthouse
100 N. Closner
Edinburg, Texas 78539
By: Hand delivery

Appellant Juan Manuel Alfaro
TDCJ Number 01988848
Texas Department of Corrections
Connally Unit
899 FM 632
Kenedy, TX 78119

*/S/ O. Rene Flores*
O. Rene Flores

**CERTIFICATE OF COMPLIANCE**

Pursuant to TRAP 9.4 (3), I hereby certify this Brief contains 10,289 words.

*/S/ O. Rene Flores*
O. Rene Flores
